NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1415

COMMONWEALTH

vs.

DAQUAN JOHNSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from the allowance of the defendant, Daquan Johnson's, motion to suppress evidence found within closed containers inside his car. We reverse.

Background. On May 19, 2021, Benyssa Mock and her sister, Shiesha Stokes, drove in their Hyundai Sonata to the defendant's father's home to retrieve Mock's cell phone and purse.[1] Upon their arrival, the defendant got out of his parked Acura SUV.[2] "[W]hile standing astride the open driver-side door of his

---

[1] In his findings, the judge credited the testimony and video recorded statements and actions of officers, including all reasonable inferences that may be drawn from their testimony except as otherwise noted.

[2] The defendant had previously been inside the vehicle.

Acura," the defendant produced a handgun and fired multiple shots at the Sonata. Both women escaped the Sonata uninjured and ran down the street. Stokes called 911 to report the shooting. The defendant tossed the keys to the Acura to his father and fled the scene on foot.

Around 2:15 P.M., officers were dispatched to the scene for reports of "shot spotter" activity.[3] On arrival, officers saw the Acura lawfully parked on the street, still running, and the Sonata parked in the middle of the street. Bullet holes were visible in the Sonata's driver's side mirror, and officers recovered fourteen spent shell casings on the road.

While no witnesses reported seeing the defendant reenter the Acura or toss the firearm inside it, officers were unable to find the defendant's firearm in the area and believed it may have been in the Acura. Officers searched the Acura with the sole motive to look for the firearm. Inside the Acura, officers found a "Chick-fil-A" cup in the front cup holder with a mobile order sticker showing the defendant's name and the date and time it was ordered, the defendant's driver's license in the center console, and two closed bags.

---

[3] Officer Luis Delgado testified that "shot spotter" is a city program that pinpoints where the sound of gunfire in a specific area of the city is.

One of the bags, a "small Louis Vuitton bag" with two zippered compartments, was found on the passenger seat. Inside a closed zippered compartment of the bag, officers found a plastic bag of "crack" cocaine. The other bag, a backpack found on the rear seat, contained a Costco bag and a wallet. Officers found more crack cocaine in the Costco bag and $733 in the wallet.

At some point, the defendant was found and arrested.[4] The defendant moved to suppress the evidence found in the Acura. The judge allowed the motion as to the crack cocaine found in the bags and the money found in the wallet. However, the judge denied the motion as to the other evidence found in "plain view."

Discussion. "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotation and citation omitted). Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015). The Commonwealth argues that the automobile exception

---

[4] The defendant was charged with two counts of armed assault with intent to murder, two counts of assault by means of a dangerous weapon, one count of carrying a firearm without a license, one count of carrying a loaded firearm without a license, and one count of trafficking in more than thirty-six grams, but less than one hundred grams of cocaine.

permitted the warrantless search of the entire car, including the closed bags and wallet.  We agree.

"[T]he automobile exception . . . applies to situations where the police have probable cause to believe that a motor vehicle parked in a public place and apparently capable of being moved contains contraband or evidence of a crime" (quotation and citation omitted).  Commonwealth v. Guardado, 491 Mass. 666, 674 (2023) (Guardado I), S.C., 493 Mass. 1 (2003), cert. denied, 144 S. Ct. 2683 (2024).  To establish probable cause, the Commonwealth must show "that the information possessed by police, at the time of the proposed warrantless search, provide[d] a substantial basis for the belief that there [was] a timely nexus or connection between criminal activity, a particular person or place to be searched, and particular evidence to be seized" (quotation and citation omitted).  Guardado I, supra at 674-675.  "Probable cause does not require an absence of uncertainty; rather, we ask whether a 'reasonable and prudent' person could have acted on such a belief" (citation omitted).  Id. at 675.

"Where there is probable cause to search a vehicle, . . . a valid search is limited to any area, place, or container reasonably capable of containing the object of the search" (quotation and citation omitted).  Guardado I, 491 Mass. at 678.

Both open and closed containers may be searched under this standard. See Commonwealth v. Bostock, 450 Mass. 616, 624 (2008) ("the lawful warrantless search of a motor vehicle . . . extends to all containers, open or closed, found within" [quotation and citation omitted]). See also United States v. Ross, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search").

Here, the defendant was seen inside the Acura before the shooting and stood by the open driver's side door of the car while he was shooting the firearm. Fourteen shell casings were found near the defendant's car, and bullet holes were found on the victims' car. Officers did not find the firearm at the scene outside the defendant's car. The judge found, and we agree, that the officers reasonably suspected that the defendant may have tossed the firearm into his car. Under these circumstances, there was a sufficient nexus between the shooting and the defendant's car to establish probable cause that the car contained evidence of the shooting. See Guardado I, 491 Mass. at 674-675. Cf. Commonwealth v. Moon, 380 Mass. 751, 755, 760 (1980) (no probable cause to search defendant's car for evidence

5

of crime where witness never saw defendant in car, and merely pointed out the car he thought belonged to defendant).

Therefore, the officers were entitled to search anywhere in the defendant's car, including any closed containers, that could reasonably contain evidence of the shooting.  See Guardado I, 491 Mass. at 678; Bostock, 450 Mass. at 624.  See also Commonwealth v. Williams, 104 Mass. App. Ct. 498, 499-500, 504, 505 (2024) (if defendant had been arrested on night of shooting and murder weapon not found on his person, "there was of course probable cause to search a container he was carrying [as well as his car, his home, and any other place might reasonably have left the gun]"; citing automobile exception to permit search of backpack defendant had placed in automobile three months after shooting).  Evidence of the shooting would include not only the missing firearm, but other instrumentalities of the crime, such as ammunition and shell casings.[5]  The two closed bags could have reasonably contained such evidence.  Therefore, the officers' search of the two closed bags was proper.

Once officers found the crack cocaine inside the two bags, there was probable cause to search the car for "drugs and other

---

[5] The fact that the officers searched the Acura for the missing firearm does not limit our inquiry.  See Commonwealth v. Hason, 387 Mass. 169, 175 (1982) ("The inquiry into probable cause is an objective one . . . [t]he subjective beliefs of the police officer are not conclusive on this issue").

evidence of drug trafficking."  See Commonwealth v. Moses, 408 Mass. 136, 145 (1990) (holding that "[o]nce the officers discovered the cocaine and the handgun pursuant to the protective search, they had probable cause to search the entire automobile, including the passenger compartment and the trunk, for contraband and weapons" under automobile exception); Commonwealth v. Rosario-Santiago, 96 Mass. App. Ct. 166, 169-170, 178 (2019) (probable cause to search for evidence of drug trafficking under automobile exception where officer found heat-sealed bag, cup of urine, elastic bands, and "mechanical hide" inside car).  The wallet could have reasonably contained evidence of drug trafficking, such as a large quantity of cash. Therefore, the officers' search of the wallet was proper.

Accordingly, the order allowing the motion to suppress is reversed.

So ordered.

By the Court (Henry,
  Desmond & Englander, JJ.[6]),

*Paul Little*

Clerk

Entered:  April 18, 2025.

---

[6] The panelists are listed in order of seniority.